UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

PELEUS INSURANCE COMPANY,

           Plaintiff,

- against -

BARONE MANAGEMENT LLC,

           Defendants.

---

Civil Action No. _____

**COMPLAINT**

Plaintiff Peleus Insurance Company ("Peleus"), by its attorneys Traub Lieberman Straus & Shrewsberry LLP, for its Complaint for Declaratory Judgment against defendants, states as follows:

## NATURE OF ACTION, JURISDICTION AND PARTIES

1. This action is brought under Section 1332 of Title 28, United States Code, seeking this Court's determination concerning the respective rights and obligations of the parties under an insurance policy issued by Peleus Insurance Company ("Peleus") to defendant Baron Management LLC ("Barone"), including a declaration that Peleus has no obligation to defend or indemnify Barone in an underlying lawsuit.

2. Peleus is a Virginia corporation, with a principal place of business in Chicago, Illinois.

3. Barone is a New York limited liability corporation with its principal place of business in Roslyn, New York.

4. None of the members of Barone are citizens of Virginia or Illinois.

5.     The amount in controversy exceeds the sum or value of Seventy Five Thousand ($75,000) Dollars exclusive of interest and costs.

6.     This is an action between citizens of different states and diversity jurisdiction is proper pursuant to 28 U.S.C. §1332.

7.     Venue is proper under 28 U.S.C. §1391 as one or more defendants reside in this judicial district or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

8.     This is a case or controversy involving a policy issued in this judicial district sufficient to permit a declaratory judgment under 28 U.S.C. §2201.

## BACKGROUND FACTS

**Underlying Action**

9.     On or about January 27, 2023 Edisson Garaicoa commenced an action in the Supreme Court of the State of New York, County of Queens entitled, *Edisson Garaicoa v. Babaian Vahik, Barone Management LLC, Scott Barone and Sandra Barone*, Index Number 702047/2023 (the "Garaicoa Action"). A copy of the complaint in the Garaicoa Action is annexed hereto as Exhibit A.

10.    In the Garaicoa Action, plaintiff seeks recovery for injuries allegedly sustained on January 10, 2023 while working on premises located at 61 Private Road, Mill Neck, New York 11765 (the "Premises"). Ex. A at ¶60.

11.    Plaintiff in the Garaicoa Action alleges that there was an ongoing construction project on the Premises on January 10, 2023. Ex. A at ¶19.

12.    Barone was the general contractor for the construction project on the Premises at all times relevant to this action.

13. Barone provided construction services on the Premises at all times relevant to this action.

14. Barone and Southern entered a contract, pursuant to which Southern would perform construction work as a subcontractor on the Premises ("the Southern Contract"). Exhibit B.

15. Plaintiff in the Garaicoa Action was an employee of Southern at the time of the alleged incident at issue in the Garaicoa Action.

16. The contract between Barone and Southern required Southern to defend, indemnify and hold Barone harmless with respect to suits related to, or arising in whole or in part, in any manner, from, or in connection with any injury to and/or death of person or resulting from or arising in connection with any act of or any negligent omission by Subcontractor or any subsubcontractor. Exhibit B at ¶4.1

17. The contract between Barone and Southern required Southern to name Barone as an additional insured on its commercial general liability policy, on a primary and non-contributory basis Exhibit B at ¶¶4.5.1 and 4.6

**The Peleus Policy**

18. Peleus issued Commercial General Liability policy 600 GL 0196202-02 to Barone for the policy period March 13, 2022 to March 13, 2023 (the "Peleus Policy"). A copy of the Peleus policy is annexed hereto as Exhibit C.

19. Peleus is providing Barone with a defense in the Garaicoa Action pursuant to the Peleus Policy and under a reservation of rights.

20. The Insuring Agreement to the Peleus Policy provides, in pertinent part, as follows:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to

defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

Exhibit C at 10 of 79.

21. The Peleus Policy contains the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CONTRACTOR WARRANTY – SPLIT SCHEDULE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULES

| **SCHEDULE A** |
|---|
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Description of Designated Operation(s):** |
| All work, activities, or operations involving land excavation, building foundation construction, load bearing beam installation, load bearing beam removal, structural steel installation, structural steel removal, elevator shaft |

| |
|---|
| work, or work, activities, or operations performed on the exterior of any building or structure. |
| **Specified Location(s):** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each occurrence Limit: $5,000,000 |
| General Aggregate Limit: $5,000,000 |
| Products/Completed Operations Aggregate Limit: $5,000,000 |

| |
|---|
| **SCHEDULE B** |
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:** |
| Each Occurrence Limit" $1,000,000 |
| General Aggregate Limit: $2,000,000 |
| Products/Completed Operations Aggregate Limit: $2,000,000 |

A. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended by the addition of the following:

1. **No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE A above applies)

We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to the designated operations described and locations specified in SCHEDULE A above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed::

a. The "contractor" has signed and executed an agreement with the insured which remains in force and effect until the date on which the work is completed and contains the following provisions:

(1) An agreement to defend, indemnify, and hold the insured harmless, to the fullest extent permitted by law, against all

losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

   (2) A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured;

b. The "contractor" has maintained "adequate insurance";

c. The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

d. All documents required must be kept on file and made available upon request.

**2. No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE **B** above applies)

We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to all operations and locations not described or specified in SCHEDULE A above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

a. The "contractor" has signed and executed an agreement with the insured which remains in force and effect until the date on which the work is completed and contains the following provisions:

   (1) An agreement to defend, indemnify, and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

   (2) A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured.

      b. The "contractor" has maintained "adequate insurance";

      c. The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

      d. All documents required must be kept on file and made available at our request.

B.   As used in this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

1. "Adequate insurance" means Commercial General Liability Insurance, Workers' Compensation and Employer's Liability Insurance written by an insurance carrier with an A.M. Best rating that is not less than A-VII and which:

   a. Remains in full force and effect without a lapse in coverage from the date on which the contract for work being performed for the insured or on the insured's behalf is executed until the date on which the work is completed;

   b. Provides Commercial General Liability Limits of Insurance for such operations that are equal to or greater than the Limits of Insurance indicated in SCHEDULE **A** and **B** above;

   c. Provides Workers' Compensation and Employer's Liability Insurance in compliance with the statutes of the applicable state;

   d. Includes coverage for "bodily injury" or "property damage" arising out of work performed by the "contractor" or on behalf of the "contractor" per the agreement with the insured;

   e. Does not exclude any claim, "suit", loss, cost or expense arising out of any "bodily injury" to any "worker" of the "contractor";

   f. Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors; and

   g. Does not exclude any claim, "suit", loss, cost or expense arising out of any "bodily injury" or "property damage" arising out of work being contracted to be performed by the "contractor".

2. "Contractor" means contractors, subcontractors, independent contractors or any other person or entity hired to perform work for the insured or on the insured's behalf.

3. "Worker" means any "employee", "temporary worker", "leased worker", "volunteer worker", apprentice, intern, casual laborer,

> borrowed employee, borrowed servant, independent contractor or subcontractor, or any person hired or retained by them, that performs work, whether directly or indirectly, for any "contractor".

C. Nothing contained herein shall be held to vary, alter, waive or extend any of the terms or the conditions, provisions, agreements or limitations of this Policy other than state above.

> ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Exhibit C 70-74 of 79.

### **The Contracts**

22. Section 4.1 of the Southern Contract provides as follows:

> To the fullest extent permitted by law, Subcontractor, and any/all of its sub-subcontractors (of any tier), shall defend, indemnify and hold harmless Contractor (BARONE MANAGEMENT LLC), Owners (SCOTT BARONE and SANDRA BARONE), and architect, and all of their officers, directors, partners, representatives, agents, and employees (and any parties which the Contractor has agreed, in its Prime Contract, to indemnify) (the "Indemnified Parties"), from and against all claims, suits, expenses (including but not limited to reasonable attorneys' fees both defending against any third-party claims, recovering amounts due hereunder and enforcing this indemnity), damages, losses, liens, judgments and liabilities (collectively, "Indemnifiable Damages") related to, or arising in whole or in part, in any manner, from, or in connection with: (a) a breach of this Subcontract by Subcontractor, including, without limitation, failure to comply with any requirement or condition hereunder; or (b) any injury to and/or death of person or damage to or loss of any property (including, without limitation, the loss of use thereof) resulting from or arising in connection with (i) any act of or any negligent omission by Subcontractor or any subsubcontractor working under Subcontractor, or any their officers, directors, partners, representatives, agents, employees, or sub-subcontractors, or (ii) any of the Work; or (c) a claim by any third party arising out of the Work; provided, however, that such indemnification shall not apply to indemnify any party to the extent of Indemnifiable Damages directly caused by such party's own negligence or willful misconduct. Subcontractor shall also pay to any indemnified party hereunder interest on the amount paid from the date first demanded until the date paid at the rate of 9% per annum. The foregoing indemnity shall not be limited in any way by any amount or type of damage, compensation, or benefits payable under any applicable

> workers compensation, disability benefits or other similar employees' benefits. If any claim under such indemnity described above is prohibited by law, then said indemnity shall apply and be enforced only to the fullest extent permitted by applicable law. The defense and indemnification obligations set forth herein shall survive the termination or expiration of this Subcontract and/or completion of the Work. Subcontractor hereby expressly permits Contractor to pursue and assert claims against Subcontractor for indemnity, contribution and common law negligence arising out of claims for damages for death and personal injury.

Exhibit B at 11-12.

23. Section 4.5.1 of the subcontract provides, inter alia, that Southern was required to maintain, inter alia, Commercial General Liability insurance of not less than $5,000,000 per occurrence/$20,000,000 in the aggregate, $5,000,000 in aggregate products and completed operations and $5,000,000 in aggregate for personal liability. Exhibit B at 13.

24. Section 4.5.1 of the subcontract also states that Southern's "CGL policy shall also cover liability arising from premises, operations, independent contractors, products-completed operations, personal injury, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract). Coverage Endorsements must include: Additional Insured Ongoing Ops CG2010 70 04 or equivalent, Additional Insured Completed Ops CG2037 07 04 or equivalent, Waiver of subrogation, and Aggregate per Project CG2503 or equivalent." Exhibit B at 13.

25. Section 4.6 of the subcontract states that the insurance provided by Southern will "be primary and non-contributory and shall not be excess over any other valid and collectible insurance, and it shall not be contributory with any other insurance that is carried by or for the benefit of Contractor and Owner." Exhibit B at 13.

26. In correspondence dated June 20, 2023, Peleus tendered the Garaicoa Action to Southern and demanded that it provide Barone with a defense, full indemnity and additional

insured coverage with respect to the Garaicoa Action, on a primary and non-contributory basis. Exhibit D.

27. In correspondence dated July 7, 2023, and received by Peleus on July 13, 2023, Southern's insurer, Atlantic Casualty Insurance Company ("ACIC"), advised Southern that it was not entitled to coverage for the Garaicoa Action under ACIC's policy and rejected Peleus's tender of that action. Exhibit E.

28. ACIC stated that there was no coverage under the policy it issued to Southern based on an exclusion in its policy that precludes coverage for any obligation to pay damages for bodily injury due to a breach of contractual obligations.

29. ACIC stated that there was no coverage under the policy it issued to Southern based on an exclusion in its policy that precludes coverage for bodily injury suffered by any employee of Southern arising out of or in the course of employment duties related to the conduct of any insured's business because plaintiff in the Garaicoa Action was an employee of Southern.

30. ACIC stated that there was no coverage under the policy it issued to Southern based on an exclusion in its policy that precludes coverage for bodily injury to any contractor for which the insured may become liable in any capacity on the ground that the plaintiff in the Garaicoa Action was acting as an employee or contractor as those terms are defined in the ACIC policy issued to Southern."


**FIRST CAUSE OF ACTION**
(Declaratory Judgment)

31. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "31" of the complaint as if fully set forth herein at length.

32. There is no coverage under the Peleus Policy if the requirements of the Contractor Warranty—Split Schedule endorsement are not satisfied by the insured.

33. Pursuant to the Contractor Warranty—Split Schedule endorsement, no insured is entitled to a defense or indemnity under the Peleus Policy if the insured enters into an agreement with a "contractor," as that term is defined in the Peleus Policy, and the "contractor" does not maintain "adequate insurance," as that term is defined in the Peleus Policy.

34. Southern qualifies as a "contractor," as that terms is defined in the Peleus Policy.

35. "Adequate insurance" is defined, inter alia, as insurance that does not exclude "claim, "suit", loss, cost or expense arising out of any "bodily injury" to any "worker" of the "contractor."

36. As a result of ACIC's denial of coverage under its policy for the Garaicoa Action based on the Mr. Garaicoa's status as an employee of Southern, Southern did not maintain "adequate insurance," as that term is defined in the Peleus Policy.

37. As a result of Southern's lack of "adequate insurance," Barone is not entitled to defense or indemnity coverage under the Peleus Policy with respect to the Garaicoa Action under the Peleus Policy

38. Based on the foregoing, Peleus has no duty to defend Barone, or any person or entity seeking coverage under the Peleus Policy, in the Garaicoa Action, and Peleus seeks a declaratory judgment to that effect.

39. Based on the foregoing, Peleus has no duty to indemnify Barone, or any person or entity seeking coverage under the Peleus Policy, in the Garaicoa Action and Peleus seeks a declaratory judgment to that effect.

**WHEREFORE**, plaintiff demands judgment as follows:

a. A declaration that Peleus does not owe a duty to defend Barone, or any person or entity seeking coverage under the Peleus Policy in the Garaicoa Action;

b. A declaration that Peleus does not owe a duty to indemnify Barone, or any person or entity seeking coverage under the Peleus Policy for the Garaicoa;

c. Such other relief as the Court deems proper, together with reasonable attorney's fees, costs and disbursements in this action.

Dated: Hawthorne, New York
September 12, 2023

                                        **TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**
*Attorneys for Plaintiff Peleus Insurance Company*

By: *Jonathan R. Harwood*
Jonathan R. Harwood
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600